UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BRIAN NEU,                                                 CIVIL NO. 06-601 (DWF/JSM)

    Plaintiff,

v.                                                    REPORT AND RECOMMENDATION

COUNTY OF BENTON,
SUSAN JOHNSON,
Benton County Jail Administrator, and
JAMES MCMAHON,
Benton County Sheriff,

    Defendants.

    Michael K. O'Tool, 18073 Bernard Trail, Brainerd, Minnesota, 56401, for plaintiff

    Kenneth H. Bayliss and Dyan J. Ebert, Quinlivan & Hughes, P.A., P.O. Box 1008, St. Cloud, Minnesota, 56302, for defendants

JANIE S. MAYERON, United States Magistrate Judge

Plaintiff has filed a complaint that presents various claims for relief arising under 42 U.S.C. § 1983, and under Minnesota state law.

Defendants have filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56, (Docket No. 8), and that motion has been fully briefed by the parties. The matter has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1.

For the reasons discussed below, the Court recommends that defendants' summary judgment motion be granted with regard to plaintiff's § 1983 claims. The Court also finds that plaintiff's state law claims should not be entertained in federal court, and should instead be

summarily dismissed without prejudice.

## I. FINDINGS OF FACT

In December 2003, plaintiff was arrested in Benton County, Minnesota, and charged with criminal sexual conduct. He was held in the Benton County Jail for nine days following his arrest, and then released. Plaintiff was later convicted of fourth degree criminal sexual conduct, and sentenced to 40 days in jail. He was given credit for nine days of pretrial confinement, so he was actually required to serve only 31 days in jail following his conviction.

Plaintiff was granted work release privileges during his jail term under a Minnesota "Huber Law" work release program. He signed a two-page "Benton County Huber/Work Release Contract," which allowed him to leave jail and go to work during the day, and return to jail at night. (Deposition of plaintiff Brian Neu, ("Neu Dep."), pp. 14-15.[1]) Plaintiff normally worked Monday through Saturday while he was serving his jail sentence. (Id., p. 29.)

Plaintiff began serving his sentence in early July, 2004. At that time, he was given a handbook that explained the jail policies, including the procedure for seeking medical care. The handbook indicated that "[s]ick call is held Monday through Friday, in the facilities medical unit or as necessary." (Bayliss Aff., Exhibit D, p. 8.) The handbook also stated that: "Inmates requesting to see a health care professional must submit an *Inmate Medical Request Form* with detailed reason for seeking medical assistance to the Housing Officer at least one (1) hour prior to sick call." (Id.) Plaintiff knew that if he wanted medical attention while he was in

---

[1] Excerpts from the transcript of plaintiff's deposition appear in the record as an attachment, "Exhibit A", to the Affidavit of Kenneth H. Bayliss ("Bayliss Aff."). (Docket No. 12.) The deposition page numbers referenced in this decision are the numbers appearing on the transcript itself. Other excerpts from the transcript are attached to the Affidavit of Michael K. O'Tool ("O'Tool Aff."), [Docket No. 16], as "Exhibit 1," [Docket No. 17].

jail, he would have to complete and submit a request form. (Neu Dep., pp. 36-37, 57-58.) The request form was described in the handbook, and plaintiff was told about the form by jail personnel, and by other inmates. (Id.)

On Sunday, August 1, 2004, plaintiff began to experience some stomach pain. He attributed his discomfort to something he ate, and did not say anything to any jail personnel. (Id., p. 30.) Plaintiff noticed the pain again the next day (Monday), but he went to work, and still did not mention it to any jail personnel (Id., p. 31). The following day, (Tuesday), as he returned from work at about 5:00 or 6:00 p.m., plaintiff said something about his stomach pain to a jail guard,. (Id., pp. 30-31.) Plaintiff was told that if he wanted medical care, he would have to fill out and submit an Inmate Medical Request Form. (Id., pp. 57-58). A similar scenario unfolded, with a different guard, every evening of that week. (Id., pp. 46, 57-58.) On each occasion, plaintiff indicated that he had "a stomach problem," and he wanted "an antacid or a Tums or something to relieve the pain in [his] stomach." (Id., p. 47.) He was told that he would have to submit a Medical Request Form, (id., p. 58), but he never did.

Plaintiff never mentioned his stomach problems to any jail attendants during their regular rounds of the jail. (Id., p. 55.) He talked about his condition only with the various guards that he met when he returned from work each evening. (Id, pp. 46, 55.) Plaintiff acknowledges that when he talked to the guards, he did not appear to be in pain, and there were no visible indications that there was anything wrong with him. (Id., pp. 47, 49).

Plaintiff testified that on the afternoon of Sunday, August 8, 2004, he told a guard named David Keake that he "wasn't feeling good in [his] stomach area." (Id., pp. 44-45.) Plaintiff has given conflicting statements about whether there were any visible signs that there was anything wrong with him at that time, saying once that there were no such signs, (Id., p.

3

44), and once that it was "obvious" he "was in pain," (Id., p. 78). Keake told plaintiff to "go to bed and sleep it off." (Id., p. 44.)[2] Plaintiff apparently made no further effort to seek any medical assistance that day.

The following day, Monday, August 9, 2004, plaintiff awoke with an "enormous" pain in his stomach, which was so severe that he could barely crawl out of his bunk. (Id., p. 79.) He told the guard on duty that the pain was so severe that he could not go to work, and that he intended to drive himself straight to a local hospital instead. The guard said that he would "let them know," (id.), presumably meaning that he would contact people who might need to know that plaintiff was going to the hospital.

Plaintiff drove to the emergency room at a hospital in St. Cloud, Minnesota. The doctors who examined him determined that his appendix had ruptured, and he was operated on that morning. The doctors who treated plaintiff informed him that if he had waited one more day before coming to the hospital, he would have died. (Plaintiff's Memorandum Of Law In Opposition To Defendants' Motion For Summary Judgment ("Plaintiff's Opp. Mem."), [Docket No. 14], p. 6.)

Plaintiff's appendectomy apparently was routine, and he made a normal recovery from his surgery. However, he has been told that because his appendix ruptured, he may have an increased risk of getting cancer sometime in the future. (Neu Dep., p. 73.) Sometime after plaintiff recovered from his surgery, he returned to the Benton County Jail to serve out the few remaining days of his sentence.

---

[2] Defendants contend that Benton County Jail records show that David Keake did not work at the jail during the weekend of August 7-8, so plaintiff could not have had any conversation with him on Sunday, August 8, 2004. (Defendants' Memorandum of Law in Support of Motion For Summary Judgment, [Docket No. 9], p. 9.)

4

## II.     PLAINTIFF'S CLAIMS

Plaintiff has sued three defendants: Benton County Sheriff James McMahon; Benton County Jail Administrator Susan Johnson; and Benton County itself. Plaintiff does not allege that any of the named defendants had any contact with him or that any of them had any direct, first-hand knowledge of any of the facts and circumstances giving rise to this lawsuit. Instead, plaintiff has sued these defendants based on the alleged acts and omissions of their subordinates, i.e., the jail attendants who interacted with plaintiff while he served his sentence. Specifically, plaintiff has alleged:

> Defendants... failed to establish and implement all necessary and proper procedures, rules, and regulations so as to assure the provision of medical aid, treatment, and services to jail inmates, and/or, failed to properly train the jail staff in such procedures, rules, and regulations established for the Benton County Jail so as to assure the provision of medical aid, treatment, and services to jail inmates of the Benton County Jail; [and] said failure contributed to or was the cause of Defendants failure to provide proper medical aid, treatment, and services to [Plaintiff] as otherwise described herein.

(Complaint, [Docket No. 1], p. 4, ¶ XIV.)

Plaintiff has further explained his claim against defendants as follows:

> The failure of the jail staff to obtain medical assistance for [Plaintiff] constitutes negligence. The failure of the Defendants to properly train and supervise these personnel was negligence. They were in control of [Plaintiff's] incarceration and had a duty to provide proper medical treatment when necessary. They failed to do so. As a result [Plaintiff's] appendix burst. Had proper medical treatment been provided [Plaintiff's] appendicitis could have been properly diagnosed and his appendix removed prior to it bursting. This resulted in significant additional pain, suffering and mental anguish being suffered by [Plaintiff]. This also resulted in [Plaintiff] now being subjected to substantial risk of contracting abdominal cancer and pancreatitis in the future: risks he would not have been subjected to if his appendix had

5

been removed prior to it bursting.

(Bayliss Aff. [Docket No. 12], Exhibit I, "Plaintiff's Answers to Interrogatories," p. 4, § 7.)

Plaintiff assets that defendants violated his federal constitutional rights under the Fourth, Fifth, Eighth and Fourteenth Amendments, and they are therefore liable to him under 42 U.S.C. § 1983. (Complaint, pp. 2, 6, ¶¶ III, XX.)

Plaintiff's Complaint also presents various "ancillary" claims based on Minnesota state law, specifically, a common law negligence claim, and a claim that defendants violated Minn. Stat. § 641.15, by failing to provide adequate medical care to a jail inmate. (Complaint, p. 7, ¶¶ XXII, XXVI.)

Plaintiff is seeking an award of "special damages incurred in excess of $15,000.00," and "general damages in excess of $50,000.00." (Id., pp. 7-8.)

Defendants have moved for summary judgment on all of plaintiff's federal and state claims, contending that accepting the facts as alleged by plaintiff, all of his claims fail as a matter of law.[3]

## III. STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-

---

[3] Although the Complaint refers to § 1983 claims based on the Fourth, Fifth, Eighth and Fourteenth Amendments, and defendants moved for summary judgment on all of these constitutional grounds, it clear from plaintiff's response that his § 1983 claim is based solely on the Eighth Amendment's "cruel and unusual punishment clause", because plaintiff never addressed defendants' arguments with respect to the Fourth, Fifth and Fourteenth Amendments. (See Plaintiff's Opp. Mem., pp. 9-11). Therefore, this Court finds that plaintiff has waived his right to challenge defendants' motion for summary judgment with respect to his claims under the Fourth, Fifth and Fourteenth Amendments and the Court need not address those claims. See Yeazel v. Apfel, 148 F.3d 910, 911-12 (8th Cir 1998) citing Roth v. G.D. Searle & Co., 27 F.3d 1303, 1307 (8th Cir. 1994)) (finding failure to raise an issue before the district court amounts to a waiver of that issue)).

moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celeotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see also Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219 (8th Cir. 1992). "[S]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327. "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" DePugh v. Smith, 880 F. Supp. 651, 656 (N. D. Iowa 1995) (quoting Anderson, 477 U.S. at 248).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed. Celotex Corp., 477 U.S. at 322-23; see also Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson, 477 U.S. at 256; Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995). "The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial." Minnesota Laborers Health & Welfare Fund v. Swenke, 2003 U.S. Dist. LEXIS 11439, *4-5 (D. Minn. 2003) (citations omitted). The non-moving party "must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy." Wilson v. Int'l Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995). If the evidence is "merely colorable or is not significantly probative, summary judgment may be

7

granted." Anderson, 477 U.S. at 249-50.

**IV.   DISCUSSION**

    **A.   Plaintiff's Eighth Amendment Claim**

"A prison official's deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment." Alberson v. Norris, 458 F.3d 762, 765 (8th Cir. 2006), citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  To sustain an Eighth Amendment claim based on this rule of law, a prisoner "must show that 'prison officials actually knew of but deliberately disregarded' the prisoner's objectively serious medical needs." Alberson, 458 F.3d at 765, quoting Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir.1997). "Under this standard, an official is deliberately indifferent (reckless) if he disregards a known risk to a prisoner's health.... To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk." Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000) (citations omitted).

For purposes of an Eighth Amendment "deliberate indifference" claim, "a serious medical need [is] 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995), quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir.1991).

Thus, in the absence of a physician's diagnosis, an Eighth Amendment deliberate indifference claim has two critical elements.  First, the prisoner must prove that he suffered from a medical problem that was so serious, and so obvious, that even a layperson would

"easily recognize" that the prisoner needed a doctor's care. Second, the prisoner must prove that some prison official was aware of his serious medical condition, and deliberately ignored it. See Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1118 (8th Cir. 2007) ("[a] prima facie case alleging... deliberate indifference requires the inmate-plaintiff to demonstrate that he suffered from an objectively serious medical need and that prison officials actually knew of, but deliberately disregarded, that need").

Plaintiff claims that his Eighth Amendment rights were violated because the guards at the Benton County Jail were deliberately indifferent to his serious medical needs. In this regard, he contends that he was suffering from a serious medical condition, and that the Jail staff ignored his obvious need for medical care.

In support of their motion for summary judgment, defendants contend that, based on the undisputed evidence, plaintiff is unable to sustain an Eighth Amendment deliberate indifference claim. The Court agrees with defendants, for the following reasons:

1. While plaintiff informed a jail guard each day that he had a stomach ache or stomach pain, there is no evidence showing that plaintiff told the guards that he was in severe or serious pain, until the morning of August 9, 2004, when he said that he needed to go to the hospital, at which time he was allowed to go.

2. Plaintiff admitted that he exhibited no visible signs or symptoms of any serious pain or serious medical problems, until the morning that he went to the hospital.

3. Plaintiff asked the guards for antacids or Tums, which would have led a reasonable guard to conclude that plaintiff was suffering from nothing more serious than an upset stomach or heartburn.

4. Plaintiff worked all day, every day, (except Sunday, which was not a workday),

9

and apparently participated in physical labor.[4]

5.   Plaintiff never talked to the same guard twice, so that no guard would have appreciated the ongoing and cumulative nature of plaintiff's complaints.

6.   Plaintiff never said anything about his stomach pain to jail personnel who made regular rounds in the jail.

7.   Plaintiff never asked for an Inmate Medical Request Form, even though he knew from the Inmate Handbook, and from conversations with other inmates, that if he wanted medical attention, he would need to fill out and submit such a form.

8.   Even when jail personnel reminded plaintiff that he would have to fill out a form if he wanted medical attention, he still declined to do so.

Given these undisputed facts, no rational jury could conclude that plaintiff's attendants at the Benton County Jail were deliberately indifferent to a serious medical need that would have been obvious to a normal layperson, much less that prison officials actually knew of, but deliberately disregarded, that need. This is a case in which the evidence "is so one-sided that one party [namely defendants] must prevail as a matter of law." Anderson, 477 U.S. at 252; see also, Foster v. Metropolitan Airports Commission, 914 F.2d 1076, 1082 (8th Cir. 1990) (upholding summary judgment where no juror could reasonably find in favor of the non-moving party).

Defendants contend that this case is similar to Jones v. Minnesota Department of Corrections, No. 05-1249 (RHK/AJB) (D.Minn.), 2006 WL 3102984. In that case, Jones, a female state prison inmate, died shortly after being transferred to a new prison facility. During

---

[4]   Plaintiff's brief in opposition to the summary judgment motion indicates that he is a carpenter.

the hours immediately prior to her death, Jones had shown several signs of illness. She had blood around her mouth, her breathing was labored, she was moaning, and at times she was nearly unable to move. Nevertheless, the district court found that such evidence did not rise to the level of an "objectively serious medical need" or that the various defendant prison officials were aware or should have been aware of her serious medical needs. Id. at 8. Therefore, the court granted defendants' summary judgment on the plaintiff's Eighth Amendment deliberate indifference claim. Defendants in this case argue that if the Jones's Eighth Amendment claim could not survive summary judgment, the same must be true here. The Court agrees.[5]

As in Jones, plaintiff has shown that the guards may have been negligent in responding to plaintiff's complaints of stomach pain. Indeed, plaintiff has explicitly characterized the guards' actions as mere "negligence." (Bayliss Aff., Exhibit I, p. 4, § 7, stating in his answers to defendants' interrogatories that "[t]he failure of the jail staff to obtain medical assistance for [Plaintiff] constitutes negligence.") (emphasis added.) But it is well-settled that "negligence – even gross negligence – is not enough to establish a claim for deliberate indifference." Jones, 2006 WL 3102984 at *7, (citing Gibson v. Weber, 433 F.3d 642, 646 (8th Cir. 2006). See also Estelle, 429 U.S. at 106 ("negligen[ce] in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment").

In reaching this decision, the Court recognizes that plaintiff has not sued any of the

---

[5] The Jones case is currently under review in the Eighth Circuit Court of Appeals, and it is possible that the Court of Appeals could reverse the District Court's summary judgment ruling. However, even if that were to occur, this Court would still reach the same conclusion because the evidence of "objectively serious medical need" in this case is far less compelling than the evidence presented in Jones.

11

individual guards at the Benton County Jail, but rather has named as defendants the guards' employer, Benton County, and their supervisors, the Sheriff and Jail Administrator, claiming that these defendants are liable under the Eighth Amendment because they failed to properly train and supervise the guards.[6]  However, a § 1983 claim against a municipality or supervisor, based on an alleged policy or custom, or an alleged failure to adequately train or supervise subordinates, must be dismissed if it is determined that the subordinates did not violate the claimant's constitutional rights. Gibson, 433 F.3d at 647 (where prisoner-plaintiff was unable to show that his medical care was "constitutionally deficient," he could not prevail on his related claim that prison administrators did not adequately train their staff).  Because this Court has determined that defendants' subordinates did not violate his constitutional rights, it necessarily follows that the named defendants cannot be held liable for failing to adequately train or supervise their employee subordinates. See Schulz v. Long, 44 F.3d 643, 650 (8th Cir. 1995) ("It is the law in this circuit * * * that a municipality may not be held liable on a failure to train theory unless an underlying Constitutional violation is located."); See also Montes v. Ransom, 219 Fed.Appx. 378, 381 (5th Cir. 2007) (unpublished opinion) ("a supervisor cannot be liable under § 1983, where, as here, there is no underlying constitutional violation"), pet. for cert. filed, May 11, 2007; Curley v. Village of Suffern, 268 F.3d 65, 71 (2nd Cir. 2001) ("a municipality cannot be liable for inadequate training or supervision when the officers involved in making an arrest did not violate the plaintiff's constitutional rights"); Wilson v. Spain, 209 F.3d 713, 717 (8th Cir. 2000) (where plaintiff's claims against individual police

---

[6] Presumably plaintiff recognizes that the named defendants cannot be held vicariously liable for the alleged unconstitutional actions of their employees and subordinates, because the doctrine of respondeat superior does not apply to § 1983 cases. Monell v. Department of Social Services, 435 U.S. 658, 694 (1978).

12

officer were dismissed, "[i]t necessarily follow[ed]" that his derivative federal claims against the city and police chief were "dead in the water"); Abbott v. City of Crocker, Mo., 30 F.3d 994, 998 (8th Cir. 1994) ("The City cannot be liable in connection with either the excessive force claim or the invalid arrest claim, whether on a failure to train theory or a municipal custom or policy theory, unless * * * [an individual officer] is found liable on the underlying substantive claim.").

In conclusion, the Court finds that plaintiff is unable to show that his constitutional rights under the Eighth Amendment were violated by the guards at the Benton County Jail. Consequently, plaintiff cannot sustain his § 1983 claims against the named defendants for allegedly failing to properly train or supervise the guards. For these reasons, the Court recommends that defendants' summary judgment motion be granted as to plaintiff's § 1983 claims.

### B. Plaintiff's State Law Claims

Plaintiff has also alleged various state law claims against the named defendants. Those claims are raised here under the federal supplemental jurisdiction statute, 28 U.S.C. § 1367(a). That statute provides

> In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

However, § 1367(c)(3) provides that federal district courts may refrain from exercising supplemental jurisdiction over state law claims when the court has "dismissed all claims over which it has original jurisdiction." Thus, federal courts need not exercise jurisdiction over

pendant state law claims when all of the related federal claims are being dismissed. See Gibson, 433 F.3d at 647 ("Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed"). In fact, "when federal claims are dismissed before trial, the normal practice is to dismiss pendent [state law] claims." Stokes v. Lokken, 644 F.2d 779, 785 (8th Cir. 1981); see also, Save Our Health Organization v. Recomp of Minnesota, 829 F.Supp. 288, 293 (D.Minn. 1993), aff'd, 37 F.3d 1334 (8th Cir. 1994). "The Supreme Court has noted that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state-law claims.'" Johnson v. City of Shorewood, Minnesota, 360 F.3d 810, 819 (8th Cir.), cert. denied, 543 U.S. 810 (2004), quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988). In addition, the Eighth Circuit Court of Appeals has said that "federal courts should 'exercise judicial restraint and avoid state law issues wherever possible.'" Thomas v. Dickel, 213 F.3d 1023, 1026 (8th Cir.), cert. denied, 531 U.S. 1013 (2000), quoting Condor Corp. v. City of St. Paul, 912 F.2d 215, 220 (8th Cir.1990).

Because the Court has determined that all of plaintiff's current federal claims, (i.e., his § 1983 claims), should be dismissed on summary judgment, the Court also concludes that it is not appropriate to exercise supplemental jurisdiction over the remaining state law claims presented in plaintiff's Complaint. See Gibson, 433 F.3d at 647 (upon dismissal of prisoner's Eighth Amendment claims, his pendant state law negligence claims were properly dismissed pursuant to § 1367(c)(3)).

In this case, as in most cases, a federal district court is not be the most suitable forum

14

for adjudicating plaintiff's state law claims. See Condor Corp., 912 F.2d at 220 (stressing "the need to exercise judicial restraint and avoid state law issues wherever possible"). Instead, it is preferable to have those claims decided by a Minnesota state court. Further, the interests of "judicial efficiency, convenience, and fairness to the litigants" will not be compromised by the federal court's refusal to entertain plaintiff's state law claims. Id. at 221.

For all of these reasons, this Court recommends that plaintiff's state law claims be dismissed without prejudice, leaving him free to pursue them in a state court action, if he so chooses. See Stokes, 644 F.2d at 785.

## V. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1. Defendant's Motion For Summary Judgment, (Docket No. 8), be GRANTED as to plaintiff's claims brought under 42 U.S.C. § 1983;

2. Plaintiff's claims brought under 42 U.S.C. § 1983 be dismissed with prejudice; and

3. Plaintiff's state law claims brought under the supplemental jurisdiction statute, 28 U.S.C. § 1367(a), be dismissed without prejudice.

Dated: July 27, 2007

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 13, 2007**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those

objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.